IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BUZZFEED INC., | ) |
| | ) |
| Plaintiff, | )   Civil Action No. |
| | )   18-1535 (CRC) |
| v. | ) |
| | ) |
| U.S. DEPARTMENT OF EDUCATION, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S COMBINED CROSS MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S SUMMARY JUDGMENT MOTION AND IN SUPPORT OF <u>PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

## I.  INTRODUCTION

The Department of Education asks this Court to keep secret nearly every substantive, anonymized detail about the alleged sexual assaults, retaliation, and other gender-based discrimination at local schools that were investigated by DOE pursuant to its statutory obligations under Title IX.  That is not what the law allows, and DOE's approach leaves the public completely in the dark about "what the government is up to" when it comes to these important investigations.  *See e.g.*, *Beck v. DOJ*, 997 F.2d 1489, 1492 (D.C. Cir. 1993).

Plaintiff acknowledges that there may be some limited details that can properly be redacted, like specific dates that a student was on extended leave from school, which someone in the community could reasonably be expected to be able to use to identify the student based on first-hand observations.  But DOE has failed to show how any of the remaining information it has redacted could reasonably be expected actually to result in the identification of anyone implicated by the records.  Under applicable FOIA case law, therefore, Plaintiff requests that the Court conduct an *in camera* inspection of the unredacted records, which consist of less than 60

total pages (not all of which are redacted), and order the release of the redacted material except to the extent DOE proves that the material could actually be used to identify anyone.

Finally, DOE has redacted some of the details also under Exemption 7(A). But DOE has not shown with any specificity, or even categorically, how releasing these details could reasonably be expected to interfere with any current or contemplated law enforcement proceedings, or even what those alleged proceedings are. Even in the context of national security, in which deference to the government is at its apex, "courts still carefully review the government's submissions to determine if they meet Exemption 7(A)'s standards." Dep't of Justice, Guide to the FOIA, Exemption 7(A), at 536.

DOE has not met its burden, and summary judgment should be granted to Plaintiff following an *in camera* inspection.

## II.   UNDISPUTED FACTS

Defendant Department of Education is responsible for investigating allegations of Title IX violations and taking appropriate actions in response. Plaintiff's Statement of Undisputed Facts ("PSUF"), ¶ 1.

DOE has not produced to Plaintiff any records for the following schools: Guilford; Union County; University of Nevada Las Vegas; Granite; and Laramie County. PSUF ¶ 8. Plaintiff has no record of receiving them. *Id.* DOE provided no affidavit or other evidence indicating that they were produced, but only that they were located and that Ms. Minami "notified OGC that these records were ready for release to Plaintiff." Dkt # 15-2 at ¶ 21. The production letters referenced in DOE's affidavits (*see* Dkt # 15-2 and its attached exhibits) are limited to the dates that correspond with the productions in Plaintiff's files, so all production letters are accounted for, but the responsive records for those missing school districts are not found in those

productions. Finally, Ms. Minami's affidavit states that the response marked "final" to the second FOIA request "was mistakenly identified as its final response," Dkt. # 15-2 at ¶ 10, and no other final response for that request is identified in any of the affidavits. Thus, it appears that DOE gathered and prepared these records but never actually produced them.

In four of the six letters that were produced, DOE either found insufficient evidence of a violation or agreed to a settlement without a full investigation. PSUF ¶ 9.

Defendant has redacted nearly all of the substantive details from the requested records it produced. PSUF ¶¶ 10-20. This appears to include, based on the surrounding unredacted context and DOE's affidavits:

1. The descriptions of the acts alleged to have violated Title IX or otherwise relevant to that investigation.

2. Defendant's analysis concluding that a district did not violate Title IX.

3. The conflicting evidence that Defendant weighed when deciding whether a violation was supported by the preponderance of the evidence.

4. The claimed "legitimate, non-retaliatory reasons" for a district's challenged actions, which Defendant accepted.

5. The acts of alleged retaliation against a complaining student.

6. The legal provision a school district violated by failing to report an incident to a person or entity whose name was redacted.

7. The dates and school years that incidents occurred; the dates incidents were reported to school officials; the dates of various actions undertaken by school officials; the dates complaints were made to Defendant; and the dates of communications between Defendant and the complainant or the school district.

8. The job titles of school officials involved in the school's response to the complaints at issue or in the school's investigations.

9. The identity of other government agencies to whom the incidents had been reported.

10. The name of Defendant's "hotline system" in which a relevant complaint was claimed to have been made.

11. The general information about other complaints at a school that Defendant had requested from the school at issue.

*Id.*

DOE has provided no affidavits addressing the exemption claims for Guilford or Union County. *See* Dkt # 15-2, 15-3, 15-4, and 15-5.

### III.   LEGAL STANDARDS

#### A.   FOIA Generally

FOIA requires federal executive agencies to produce their records upon request unless one of the Act's nine exemptions protects those records from disclosure. *See* 5 U.S.C. § 552(b). These exemptions "balance the public's interest in governmental transparency against 'legitimate governmental and private interests [that] could be harmed by release of certain types of information.'" *United Techs. Corp. v. DOD*, 601 F.3d 557, 559 (D.C. Cir. 2010) (alteration in original) (quoting *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (en banc)). "But these limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976). Accordingly, when a plaintiff challenges an agency's withholding of records, the agency must show that one of FOIA's exemptions applies. *ACLU v. DOD*, 628 F.3d 612, 619 (D.C. Cir. 2011).

The agency may satisfy its burden of showing that a FOIA exemption applies through an affidavit or declaration that "describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith." *Id.* In some circumstances, courts conduct an *in camera* inspection to test the agency's assertions. *Rose*, 425 U.S. at 379-81; *Spirko v. USPS*, 147 F.3d 992, 997 (D.C. Cir.

1998) ("If the agency fails to provide a sufficiently detailed explanation to enable the district court to make a *de novo* determination of the agency's claims of exemption, the district court then has several options, including inspecting the documents *in camera*."); *Quiñon v. FBI*, 86 F.3d 1222, 1229 (D.C. Cir. 1996) ("[W]here an agency's affidavits merely state in conclusory terms that documents are exempt from disclosure, an *in camera* review is necessary."). *In camera* inspection is more often appropriate when the volume of records to be reviewed is not substantial. *E.g., Quiñon*, 86 F.3d at 1229.

    **B.**    **Exemption 7(A)**

As DOE acknowledges, Exemption 7(A) applies only when release of a law enforcement record "could reasonably be expected to interfere with enforcement proceedings." DOE MSJ, Dkt # 15, at 7-8. The agency must identify the specific pending or contemplated law enforcement proceeding upon which it relies. *Mapother v. DOJ*, 3 F.3d 1533, 1542 (D.C. Cir. 1993); DOJ FOIA Guide, Exemption 7(A), at 525, *available at* https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/exemption-7A-2009.pdf (last accessed March 8, 2019). The agency must also identify the "distinct harm" that could reasonably be expected to result. *Crooker v. ATF*, 789 F.2d 64, 65-67 (D.C. Cir. 1986); DOJ FOIA Guide, Exemption 7(A), at 526. The exemption no longer applies once the law enforcement proceeding is over. *W. Journalism Ctr. v. Office of the Indep. Counsel*, 926 F. Supp. 189, 192 (D.D.C. 1996).

    **C.**    **Exemptions 6 and 7(C)**

This suit does not involve the disclosure of names, addresses, or other directly identifiable information. Rather, DOE contends that the redacted information could be used indirectly by a person in the relevant community to identify the students at issue in the redacted records. The Supreme Court has addressed this issue under Exemption 6. *Rose*, 425 U.S. at 380.

The Court recognized in *Rose* that the disclosure of such indirect information could potentially be used to identify the subject of a record, but agreed with the Court of Appeals that the appropriate mechanism for making that determination is an *in camera* inspection of the records by the District Court. *Id.* at 379-81. In doing so, the Court rejected the government's blanket argument that it would be impossible to eliminate information that could result in identifying the subjects of the records:

> This contention has no merit. First, the argument implies that Congress barred disclosure in any case in which the conclusion could not be guaranteed that disclosure would not trigger recollection of identity in any person whatever. But this ignores Congress' limitation of the exemption to cases of "clearly unwarranted" invasions of personal privacy. Second, Congress vested the courts with the responsibility ultimately to determine "de novo" any dispute as to whether the exemption was properly invoked in order to constrain agencies from withholding nonexempt matters.

*Id.* The Court further explained that "[t]he legislative history is clear that Exemption 6 was directed at threats to privacy interests more palpable than mere possibilities." *Id.* at 380 n.19; *see also Nat'l Ass'n of Retired Fed. Employees v. Horner,* 879 F.2d 873, 878 (D.C. Cir. 1989) (*Rose* "turns upon the likelihood that the effect will ever come to pass. In that case, there was substantial doubt that any invasion of privacy would occur, and it was that uncertainty that led the court to rule as it did.").

While the analysis under Exemption 7(C) is not completely identical to Exemption 6 in all respects, it is "substantially similar." *James Madison Project v. DOJ*, 208 F. Supp. 3d 265, 284 (D.D.C. 2016); *see also* DOE MSJ, Dkt # 15, at 8-11 (analyzing Exemptions 6 and 7(C) uniformly in this case).[1]  Thus, the requirement that DOE establish that identification of any individuals would occur from release of each specific redacted passage (without which no

---

[1] It is true that Exemption 7(C) can sometimes be applied categorically. *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 777 (1989). This Court need not decide whether these kinds of letters are categorically exempt because DOE has not made that claim and has not shown that the redacted information would allow anyone to identify the people implicated in the letters, without which there is no privacy issue.

privacy concerns are implicated), and the appropriateness of an *in camera* inspection, should apply to Exemption 7(C) in this case. *See id.*; *Reporters Comm. For Freedom of Press*, 489 U.S. at 767 (applying *Rose* to Exemption 7(C) claim); *cf.* 5 U.S.C. § 552(a)(2) ("To the extent required to prevent a clearly unwarranted invasion of personal privacy, an agency may delete identifying details when it makes available or publishes an opinion, statement of policy, interpretation, staff manual, instruction, or copies of records referred to in subparagraph (D). However, in each case the justification for the deletion ***shall be explained fully in writing***, and the extent of such deletion shall be indicated on the portion of the record which is made available or published, unless including that indication would harm an interest protected by the exemption in subsection (b) under which the deletion is made." (emphasis added)).

Finally, the Supreme Court has recognized that the public's right to monitor the government's compliance with the law is an important public interest to be weighed against any privacy interests. *Dep't of State v. Ray*, 502 U.S. 164, 178 (1991) ("Thus, the Court of Appeals properly recognized that the public interest in knowing whether the State Department has adequately monitored Haiti's compliance with its promise not to prosecute returnees is cognizable under FOIA.").

## IV.   ARGUMENT

### A.   DOE Should Be Ordered to Produce the Missing Records

As explained above, DOE has not produced records for several of the schools at issue: Guilford; Union County; University of Nevada Las Vegas; Granite; and Laramie County. Thus, the Court should order them produced in a manner consistent with the Court's ruling on the exemptions asserted over the other records.

B.     **DOE Has Not Proven Its Exemption 7(A) Claims**

The FOIA request at issue in this case seeks only Title IX letters sent at the conclusion of DOE's investigations.  Dkt # 1-1 and 1-2.  Further, the Stargate/Adams County letter and the Imagine Prep letter show that no enforcement proceedings are pending or reasonably contemplated. PSUF Exhibit B at 7 (DOE "find[s] insufficient evidence to support the Complainant's allegations"); PSUF Exhibit A at 5 (DOE "entering into an agreement without completing a full investigation" and discussing future enforcement only if the school "fails to implement the Agreement").   And contrary to *Mapother* and the DOJ's own FOIA Guide, DOE has not identified any other specific proceedings on which it is relying.  Thus, DOE has not met its burden under Exemption 7(A).

In addition, DOE has not even identified the "distinct harm" underlying its exemption claim under *Crooker*, let alone established it.  The only two affidavit paragraphs cited by DOE, Sumner at paragraphs 6 and 8, are entirely generic and offer no specific way in which any enforcement proceedings could be reasonably expected to be compromised by the release of the redacted information.  DOE MSJ, Dkt # 15 at 8; Dkt # 15-5 at ¶¶ 6, 8.

C.     **DOE Has Not Proven Its Exemption 6 or Exemption 7(C) Privacy Claims**

Plaintiff elects not to dispute the redaction of agency signatures in this case.

DOE's remaining privacy exemption claims are based on the assertion that if any of the redacted details are disclosed, someone in the relevant community could somehow determine the students involved.  DOE has provided the Court with no evidence to support this claim, and instead, in effect, makes a blanket assertion that no specific details about these investigations can ever be released (and thus, that DOE's handling of these investigations is not subject to public scrutiny).  Had Congress intended such a result, it would have created the kind of blanket exemption for which DOE advocates before this Court.

Further, while Plaintiff does not have access to the redacted details of these letters, and respectfully requests that the Court conduct an *in camera* inspection of the relatively small number of pages at issue, it seems clear from the context surrounding the redactions that DOE has applied its black marker far too enthusiastically. It is implausible that anyone, including someone attending the schools in question, could figure out from the details of the alleged misconduct, or the dates of various procedural activities, or the job titles of personnel involved, or any of the other details discussed above, what students were involved in or the victims of the alleged misconduct. Plaintiff agrees that there may be a sufficient risk of such disclosure from certain very limited details, such as the apparent redaction of the dates that a student was on leave from the school, but the vast majority of details should be released.

Finally, while DOE has not proven any privacy interest because it has not established that anyone could identify any students from what has been redacted, there is a significant public interest in disclosure. The kinds of details listed above are necessary for the public to understand the facts before DOE when it determined that there was insufficient evidence to find a violation or elected to settle a claim without conducting a complete investigation. *See Ray*, 502 U.S. at 178. Justice issues around sexual misconduct are a tremendously important issue, especially at the present time. The public has a right to make informed decisions about the veracity of DOE's investigations into that kind of misconduct. *See, e.g., Prechtel v. FCC*, 330 F. Supp. 3d 320, 332 (D.D.C. 2018) ("FOIA exists to illuminate not just whether an agency complied with its statutory duties, but also how it chose to do so").

## V. CONCLUSION

For these reasons, summary judgment should be granted for Plaintiff and denied to Defendant.

RESPECTFULLY SUBMITTED,

/s/ *Matthew V. Topic*

_____

Attorneys for Plaintiff

Matthew Topic
(E-Mail:  foia@loevy.com)
LOEVY & LOEVY
311 N. Aberdeen, Third Floor
Chicago, Illinois 60607
Tel.: (312) 243-5900
Fax: (312) 243-5902
Bar No. IL0037

**CERTIFICATE OF SERVICE**

I, Matthew V. Topic, an attorney, certify that on March 13, 2019, I caused the foregoing PLAINTIFF'S COMBINED CROSS MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S SUMMARY JUDGMENT MOTION AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT to be served on all counsel of record via the Court's CM/ECF system.

*/s/ Matthew V. Topic*